**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**July 9, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

TERRI L. THURMAN,

    Plaintiff - Appellant,

v.

STATE OF KANSAS,

    Defendant - Appellee.

No. 25-3064
(D.C. No. 5:23-CV-04044-JWB)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

This appeal grows out of a claim of gender discrimination when Ms. Terri Thurman was a court clerk in Kansas. While working as the clerk, Ms. Thurman was allegedly bullied by a judge (the Hon. Fred Johnson) with the acquiescence of an administrator (Mr. Mac Young). The

---

[*] The parties waive oral argument, and it would not materially help us to decide this appeal. So we have decided the appeal based on the briefs and the appellate record. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

overarching issue is whether a reasonable fact-finder could attribute the bullying and acquiescence to Ms. Thurman's gender. We answer *no*.

**1.      The judge allegedly bullies Ms. Thurman.**

Ms. Thurman's problems with the judge started at a budget meeting. There she allegedly angered Judge Johnson by saying that she didn't know when she would retire. Mr. Young saw the episode; rather than intervene, however, he allegedly asked Ms. Thurman about her own job performance. Ms. Thurman later complained to state agencies about Judge Johnson's bullying and Mr. Young's reaction.

The agencies dismissed Ms. Thurman's complaint against Judge Johnson and recommended training for Mr. Young. Afterward, Ms. Thurman was told that she needed to improve in coaching performance and in disciplining employees. Tensions continued, and Ms. Thurman requested a meeting with the district's chief judge. The chief judge said that she was tied up and referred Ms. Thurman to Mr. Young. Rather than meet with Mr. Young, Ms. Thurman retired and later sued the State of Kansas under Title VII of the Civil Rights Act of 1964, claiming a hostile work environment, retaliation, and constructive discharge. The district court granted summary judgment to the State.

**2.      We independently apply the summary-judgment standard.**

We conduct de novo review, applying the same standard that governed in district court. *Sanderson v. Wyo. Highway Patrol*, 976 F.3d

2

1164, 1173 (10th Cir. 2020). That standard requires the State to show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). To determine whether the State made that showing, we view all of the evidence and reasonable inferences in favor of Ms. Thurman. *Sanderson*, 976 F.3d at 1173–74.

**3.    Ms. Thurman fails to link her abusive work environment to her gender.**

The first claim involves a hostile work environment. For this claim, Ms. Thurman needed to show that the workplace had become abusive because of her gender. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021).

The underlying incidents are gender neutral: Ms. Thurman claims that the judge had bullied her and that the administrator failed to help. But we must also consider the context to determine whether the bullying and inaction were part of a pattern of gender discrimination. *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020).

Ms. Thurman did present evidence that Judge Johnson

- had mistreated two other women and

- hadn't appeared to mistreat two male employees (the administrator and a court reporter).

But this distinction proves little: It shows only that there were many employees—both male and female — who didn't complain about the judge.

3

We rejected a similar theory of mistreatment in *Overfield v. Kansas*, No. 23-3057, 2024 WL 1611473 (10th Cir. Apr. 15, 2024) (unpub.). That case involved another claim of gender discrimination by a court reporter in Ms. Thurman's office. The court reporter alleged a hostile work environment from bullying by the same judge (Judge Johnson). Like Ms. Thurman, the *Overfield* plaintiff claimed gender discrimination, arguing that Judge Johnson had targeted females for mistreatment while providing better treatment to the same male employees involved here (the administrator and court reporter). For that claim, the female employee pointed to Judge Johnson's mistreatment of Ms. Thurman and her daughter, adding that the judge hadn't been known to mistreat males. *Id*. at *4.

We held that the State of Kansas was entitled to summary judgment on this claim because

- a fact-finder couldn't attribute Judge Johnson's conduct to gender discrimination and

- the undisputed evidence showed that Judge Johnson had mistreated colleagues of both genders.

*Id*. at *4–7.[1]

This reasoning applies here too. Ms. Thurman argues that Judge Johnson didn't mistreat males. But she lacks any evidence of a

---

[1]    We also reasoned that the plaintiff hadn't presented evidence that she was similarly situated to the male employees. *Overfield*, 2024 WL 1611473 at *5.

discriminatory motive. In fact, Ms. Thurman testified that she thought Judge Johnson had lashed out at any statement that he didn't like—even if it had come from another male judge.[2] And the State presents evidence of Judge Johnson's hostile conduct toward a male colleague. So the totality of the circumstances don't support an inference of gender discrimination.

Given the similarities with *Overfield*, we apply its reasoning here. Though our opinion there isn't precedential, *see* note*, it is persuasive and shows that a reasonable fact-finder couldn't tie Ms. Thurman's abusive work environment to gender discrimination. So the district court didn't err in granting summary judgment to the State of Kansas on the claim of a hostile work environment.

### 4.    The retaliation claim fails because Ms. Thurman hasn't shown causation between her complaints and her mistreatment.

Ms. Thurman also claims retaliatory harassment based on her complaints about Judge Johnson and Mr. Young. For this claim, Ms. Thurman needed to show that the State had taken a materially adverse action in order to retaliate. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 352 (2013); *Byrnes v. St. Catherine Hosp.*, 158 F.4th 1107, 1114 (10th

---

[2]    On appeal, Ms. Thurman questions the admissibility of her own testimony on this point based on hearsay and personal knowledge; but she didn't raise hearsay or personal knowledge in district court. *See Jiang v. City of Tulsa*, 169 F.4th 1194, 1204 (10th Cir. 2026) ("[W]e ordinarily decline to consider arguments made for the first time on appeal.").

Cir. 2025).[3] The evidence must allow the fact-finder to infer that a desire to retaliate had constituted a but-for cause of the adverse employment action. *Nassar*, 570 U.S. at 352.

For evidence of a retaliatory motive, Ms. Thurman relies in part on Judge Johnson's alleged announcement to staff that she had filed a complaint against him. But Ms. Thurman lacks any evidence that Judge Johnson had made this announcement. Ms. Thurman testified that she had learned of the announcement from two other employees, but conceded that they hadn't said who made the announcement. So she lacks evidence of a retaliatory motive.

Ms. Thurman also complains about Zoom meetings and an inability to use a local newspaper when advertising a vacancy in her office. But Ms. Thurman doesn't tie the Zoom meetings or inability to advertise in a newspaper to her complaint against Judge Johnson or Mr. Young. These incidents didn't take place until more than a year after Ms. Thurman had complained. *See Lauck v. Campbell Cnty.*, 627 F.3d 805, 815 (10th Cir. 2010) (stating that the fact-finder cannot infer causation from temporal

---

[3] The State raised causation in the summary-judgment motion, but the district court rejected the retaliation claim on a different ground (the failure to show a materially adverse action). App., vol. 2 at 374–75. But we can affirm the ruling on different grounds because the State raised causation in the summary-judgment motion and on appeal, the availability of summary judgment is legal rather than factual, and the record is adequately developed. *I Dig Texas, LLC v. Creager*, 98 F.4th 998, 1009 (10th Cir. 2024).

proximity alone when the act took place more than three months after the protected activity); *Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003) (stating that a five-month gap is ordinarily too long to support an inference of causation in a retaliation claim).

Finally, Ms. Thurman relies on

- Mr. Young's failure to promptly fill a vacancy in the clerk's office and

- a delay of roughly three months to get the weekly calendar.

But there's no evidence tying the delay in filling the vacancy to Ms. Thurman's complaint. Mr. Young promptly advertised the vacancy,[4] and Ms. Thurman immediately started interviewing applicants; but it took roughly six months to find a good fit. The delay in finding a good fit doesn't suggest a retaliatory motive.

Nor could a retaliatory motive be inferred from the delay in sending Judge Johnson's calendar. The person responsible for sending the weekly dockets was Myra Freeman, not Judge Johnson; and other clerks sent the dockets to Ms. Thurman whenever she requested. And after Ms. Thurman flagged the issue, the weekly calendars came to her as a matter of course.

---

[4]    Ms. Thurman does argue that the administrator should have allowed newspaper advertising. *See* p. 6, above. We reject that argument based on the failure to link the Mr. Young's decision to Ms. Thurman's complaint. *See id.*

7

In these circumstances, a fact-finder couldn't reasonably infer a retaliatory motive from the prior delay in sending the weekly dockets to Ms. Thurman.

5.    **The claim of constructive discharge fails based on Ms. Thurman's inability to show gender discrimination.**

Ms. Thurman also claims constructive discharge when the chief judge rebuffed an invitation to meet. For this claim, Ms. Thurman needed to show impermissible discrimination. *Rivero v. Bd. of Regents of Univ. of New* Mexico, 950 F.3d 754, 761 (10th Cir. 2020). But as discussed above, Ms. Thurman failed to present any evidence of such discrimination. *See* Parts 3 and 4, above. This failure to present evidence of discrimination is fatal on the claim of constructive discharge. *See Rivero*, 950 F.3d at 761.

Affirmed.

Entered for the Court


Robert E. Bacharach
Circuit Judge